# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JAMES CALHOUN-EL, # 160-083  \*

Plaintiff  \*

v  \*  Civil Action No. RDB-12-2384

RANDALL WATSON, et al.  \*

Defendants  \*
      \*\*\*

## MEMORANDUM OPINION

Pending is self-represented Plaintiff James Calhoun-El's ("Calhoun-El") Complaint under 42 U.S.C. § 1983 (ECF No. 1) to which Defendants, Assistant Administrative Commissioner Randall Watson, Director of North Region Jon P. Galley, Warden Bobby Shearin, Assistant Warden Dave Wade, Deputy Secretary of Operations J. Michael Stouffer, Chief of Security Keith Arnold, Major Robert Bechtel, Lt. Paul Pennington, Lt. Dale Smith, Lt. Thomas Sires, Lt. Jason Harbaugh, Sgt. William Thomas, Sgt. Bryan Harper, Sgt. Derek Baer, CO II Sharon Skelly, CO II Jeffrey Grabenstein, CO II Joshua Pritts, CO II Floyd Wellings, CO II Rebecca Robey, CO II Randolph Bennett, CO II Melinda McCoy, CO II Cody Gilpin, CO II Keith Markle, CO II, Eric Durst, CO II Corey Simpson, CO II S.R. Simpson, CO II David Reed, CO II Michael Judy, CO II Jamie Farris, Officer Ward, Officer Hochard, CCMS Shawn Gainer, CCMS John Sindy, and CCMS Eldred Durst, by their counsel, have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 19) with verified exhibits. No hearing is needed to resolve the issues presented. *See* Local Rule 106.5 (D. Md. 2011). Defendants' pleading (ECF No. 19) will be treated as a Motion for Summary Judgment[1] and GRANTED for reasons to follow.

---

[1] Calhoun-El was granted additional time to file an opposition (ECF Nos. 21, 22, and 23), but has not done so.

# BACKGROUND

## I.    PLAINTIFF'S CLAIMS

In this prolix thirty-four page Complaint, Calhoun-El, an inmate at North Branch Correctional Institution ("NBCI"), alleges violations of his rights under the First, Fifth, Eighth and Fourteenth Amendment, and presents claims concerning: 1) confiscation, destruction, and loss of his legal paperwork and books; 2) denial of access to the prison library; 3) denial of access to the courts; 4) failure to process his legal mail; 5) failure to process his Administrative Remedy Procedure ("ARP") requests; and 6) retaliation for filing complaints. (ECF No. 1, pp. 10-11).[2] Calhoun-El requests declaratory relief and compensatory and punitive damages as redress. *See id.*, pp. 33-34.

## A.    LEGAL PAPERWORK AND LIBRARY ACCESS

Calhoun-El claims between October 29, 2009 and May 21, 2012, his constitutional rights were violated because NBCI staff refused to permit him to go to the library or confiscated his legal papers and law books. *See id.* pp. 11-25.[3]  The litany of allegations includes: 1) on October 29, 2009, Defendant Simpson and "others" would not permit him to go to the library; 2) on November 16, 2010, carbon paper that he needed for legal work was confiscated by Defendants Robey and Hochard and when he asked the carbon paper be returned, they denied his request; 3) on July 13, 2011,  his carbon paper needed for legal work was confiscated by

---

[2]  The Court recognizes Calhoun-El is a self-represented litigant and has accorded his pleadings liberal constructions, but notes the pleadings are at times unclear and difficult to discern.

[3]  Calhoun-El also claims that on or about February 1, 2008, former Warden Rowley confiscated all of his legal papers and law books for 23 days. *See id.*, p. 11.  Calhoun-El does not name former NBCI Warden Rowley as a defendant in this case.  This claim is more than three years old and therefore time-barred by the applicable statute of limitations. *See Jersey Heights Neighborhood Association v. Glendening*, 174 F.3d 180, 187 (4th Cir. 1999) (noting statute of limitations for § 1983 proceedings is borrowed from a state's general personal injury statute of limitations). Maryland applies the general three-year statute of limitations to causes of action about personal injury torts. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101. This claim will not be further considered.

Defendant Markle, and when he asked that it be returned to him, Defendant Markle denied his request; 4) on May 17, 2011, Defendant Gilpen denied his request for library access and Officer McCoy refused to open Calhoun-El's cell door so that he could visit the "night library"; 5) between September 13-16, 2011, unspecified legal papers were taken by correctional officers and not returned by Defendant Baer upon request; 6) in January and April 2012, unspecified legal papers were taken by correctional officers; 7) on August 12, 2011, Defendants Shearin and Smith denied his request to use the library computer to "shepardize" case law; 8) on December 2, 2011, he made "daily requests" to Defendants Pennington, Ward, Harper, and other officers not to destroy his legal mail envelopes to no avail; 9) on January 7, 2012, Defendants Pritts and Durst denied his request to keep his legal paperwork in his cell;[4] 10) on February 6, 2012, he asked Defendants Bechtel and Sires to return all his legal materials held in storage and then filed an appeal with Defendants Stouffer and Watson; and 11) on February 24, 2012, his documents were confiscated, destroyed, or lost by Defendants Simpson, Judy, Bennett and Smith so he was unable to attach them to his "civil complaint," and he filed a "grievance"[5] with Defendant Watson who dismissed the appeal; 12) on March 27, 2012, he asked Defendant Bennett to return legal materials which had been packed for a medical trip and the legal materials were not returned for six days; 13) on April 2, 2012, Bennett denied his request to retrieve pending civil and criminal cases from storage; 14) on May 5 and 14, 2012, Defendants Smith and Wade denied his requests to retrieve legal paperwork; 15) on May 17, 2012, Defendant Sindy denied his request to retrieve stored legal materials needed in anticipation of a grievance hearing; and 16)

---

[4] Calhoun-El acknowledges that after corrections officers completed an inventory of the allowable 1.5 cubic feet of paperwork, his papers were returned; however, he complains that he was not permitted to select the documents needed for current cases. ECF No. 1, pp. 15-16.

[5] ECF No. 1, *see id.* pp. 18 and 24-25. Calhoun-El seems to use the terms "ARP" and "grievance" interchangeably.

on May 21, 2012, Defendant Gainer, a case manager, denied his requests for photocopying papers needed for pending litigation, *See id*, p. 21.

Further, Calhoun-El complains: 17) on February 22, 2012, he was denied a library pass from Defendant Reed ("Reed"), and after Calhoun-El returned from the library, Reed issued an infraction against him for being in a location without authorization;[6] 18) his "grievance" for a satellite library for segregation inmates was denied; and 19) on April 23, 2012, Defendant Smith denied his request for a computer in Calhoun-El's housing unit.

## B.   JUDICIAL AND ADMINISTRATIVE PROCEEDINGS

Calhoun-El claims to have suffered adverse consequences in judicial and administrative proceedings due to Defendants' failure to return necessary legal papers. Specifically, on February 23, 2012, a videoconference addressing Calhoun-El's Petition for Judicial Review was postponed by the Honorable Gary G. Leasure of the Circuit Court for Allegany County because Calhoun-El's legal papers had been confiscated. He states that on May 30, 2012, Judge Leasure ordered Warden Shearin to locate and return Calhoun-El's legal materials, and Shearin ignored the Order.[7] *See id.*, p. 25.

According to Calhoun-El, he filed a "grievance" with Shearin May 31, 2012, after eight copies [8] he received from Defendant Gainer were illegible, thereby causing his litigation to be time-barred. *See id.*, p. 24. Calhoun-El complains his requests to Defendants Arnold, Sires, Smith and Bennett to return his stored documents were denied, and on April 4, 2012, his Petition

---

[6] ECF No. 1, p. 19.

[7] On May 30, 2012, Judge Leasure ordered the return of all Calhoun-El's legal documents in storage pertinent to four appeals from administrative decisions. (ECF No. 19, Exhibit 28, ¶ 5 (Declaration of Warden Bobby Shearin and Court order). *See infra*, p. 23.

[8] Calhoun-El fails to identify the contents of these photocopies.

for Judicial Review was dismissed for failure to serve a copy of his Memorandum on Respondent.

Further, Calhoun-El claims his "appeal" was dismissed by the Court of Special Appeals of Maryland because he was unable to include circuit court docket entries as part of the record extract. He avers this information was in storage and unavailable to him. *See id.*, p. 23. On May 24, 2012, Calhoun-El filed a Motion to Re-Open a closed state post-conviction proceeding. He asserts he was unable to amend his Motion in that case because a portion of his trial transcript, pleadings, and research notes were lost or destroyed by Defendants. *See id.*[9]

Also, Calhoun-El claims he was unable to attend a video conference before Administrative Law Judge Zubert Bakart Williams on April 12, 2012, the subject of which was whether Calhoun-El was required to mail his excess personal property out of the institution or it would be destroyed. *See id.* Calhoun-El avers he was unable to attend the video conference because Defendants Durst and Farris showed "unwillingness" to retrieve his cane even after he showed Defendants his medical authorization. *See id.* Lastly, he asserts "common law" papers were confiscated by prison officials and his bid for parole on his life sentence was denied as a result. *See id.* p.24.

## C.    LEGAL MAIL AND ARP REQUESTS

Calhoun-El claims other inmates have noticed his legal mail in segregation housing is removed and placed in a separate box by Defendant Smith whereas the mail for other segregation inmate is placed in a bag and delivered to the mail room. Plaintiff alleges numerous pieces of his legal mail are not being processed. *See id.*, p. 23-25.

---

[9] The Maryland Judiciary Website does not show a Motion to Reopen filed on this date. It is unclear the referenced motion was filed.
*See* http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId=26250C&loc=68&detailLoc=MCCR

Calhoun-El complains that about February 24, 2012, Defendant Wade sent a memorandum to him outlining Administrative Remedy Procedure ("ARP") requirements. Calhoun-El filed ARPs in NBCI #1882-09, #3363-10, 1556-12, 1572-11, 1576-11, 2261-11, 3710-11 and #0634-12 relating to the allegations set forth in the Complaint. (ECF No. 1, pp. 9-10). He claims that he filed ARPs on September 5 and 24, 2011, January 14, 18, and 25, 2012, March 27, 2012, and April 9, 2012, [10] appealed the ARP determinations, and filed two grievances with the Inmate Grievance Office (IGO) pertaining to the allegations set forth in this Complaint. See id. p.10.[11]

## D. RETALIATION

Calhoun-El alleges his legal papers were confiscated and destroyed in retaliation for filing complaints in this Court and ARP requests. Additionally, he claims that under orders from Defendants Shearin, Wade, Arnold, Harbaugh and Bennett, on July 29, 2011, he was placed in a contingency cell [12] for fourteen days with only a jumpsuit, and was denied a mattress, furniture, hygiene items, showers, medication and outside activities, and slept on a concrete floor.

## II. DEFENDANTS' EXHIBITS

Defendants' verified exhibits and declarations are undisputed and summarized as follows.

## A. HOUSING ASSIGNMENT RECORDS

Calhoun-el was housed in the general prison population at NBCI between September 28, 2010 and July 13, 2011, after which he was placed on administrative segregation. (ECF 19, Exhibit, pp. 5-7). Calhoun-El was placed in a temporary cell, administrative segregation and disciplinary segregation housing numerous times beginning in July of 2011, a result of his

---

[10] Calhoun-El does not provide the numbers of these ARP requests.

[11] Defendants do not seek dismissal of any claims for failure to exhaust administrative remedies.

[12] These cells are called temporary housing cells. (ECF No. 19, Defendants' Memorandum, n. 2).

continued refusal to accept housing in a two-inmate cell and rule violations or infractions. On August 2, 2011, he was placed on disciplinary segregation status where he remained until September 17, 2011, when he returned to the general prison population. On January 7, 2012, he was again placed on administrative segregation status. Calhoun-El returned to general prison population housing on January 26, 2012.

On February 24, 2012, Calhoun-El was assigned to administrative segregation where he stayed until he was returned to the general population on March 22, 2012. He was put on administrative segregation on April 13, 2012 until April 19, 2012, at which time he was placed on disciplinary segregation status, returning to the general population on April 24, 2012.

On May 8, 2012, Calhoun-El was placed on disciplinary segregation where he stayed until June 7, 2012, at which time he was assigned to administrative segregation housing. Calhoun-El was placed on disciplinary segregation on July 6, 2012, and on July 23, 2012, assigned to administrative segregation. He stayed in administrative segregation until September 19, 2012, when he was put on disciplinary segregation. Calhoun-El continued in disciplinary segregation until November 2, 2012, when he was placed on administrative segregation. He remained on administrative segregation until November 20, 2012, when he was assigned to disciplinary segregation status. On December 3, 2012, he was again placed on administrative segregation, and remained there until December 5, 2012, when he was released to general population. *See id.*

In response to disciplinary issues, on July 13, 2011, Calhoun-El was issued an infraction for violating Rule #100 (involvement in a disruptive activity), Rule #105 (possession of a weapon or any item that could be modified into a weapon), Rule #406 (possessing, passing, or receiving contraband), and #408 (misuse, alteration, tampering with, damaging or destruction of any property, tool or equipment to include possession of any property in a hazardous condition),

when pieces of wire, an adapter, carbon paper and a restricted Institutional Directive (ID) #110-26 entitled "Search Plans" were found during a cell search. (ECF No. 19, Exhibit 3). At the adjustment hearing held on July 19, 2011, the institution elected not to pursue the rule #100 violation and the charge was dismissed. After concluding the record failed to show the wire was used as a weapon, the hearing officer found Calhoun-El guilty of possession of contraband. Calhoun-El pleaded guilty to violating rule #408 and received 20 days of cell restriction for violating rules #406 and #408. *See id.* Warden Shearin affirmed the hearing officer's decision and sanctions. *See id; see also* ECF No. 19, Exhibit 4.

On July 20, 2011, Calhoun-E received an infraction for refusing housing in a two-inmate cell. (ECF No. 19, Exhibit 5). Upon arriving at his cell at his new housing unit (H.U.) #4, Calhoun-El returned to the front of the tier and stated "I got single-cell status." (ECF No. 19, Exhibit 5, p. 2). Defendant ("Custer") Custer informed Calhoun-El no single cells were available, and he would have to move into the assigned cell. Calhoun-El repeated that he had single-cell status, and Custer repeated no single cells were available. Custer asked Calhoun if he was refusing housing and Calhoun-El replied, "Yes, I'm refusing housing!" *See id.* At that point, Calhoun-El was placed in a temporary housing cell. Custer confirmed with traffic Officer-in-Charge Detrick that plaintiff did not have single-cell status. *See id.*

An adjustment hearing held on July 28, 2011, and the hearing officer found:

> After reading the report of the staff (and hearing testimony) about this reported incident and weighing all of the information submitted (whether photos, matters of records, supporting documents) as provided if applicable to this reported incident; this individual testified he had single cell status. He presented paperwork to support same. Institutions rep. indicated the document is tped,[sic] something the institution never does. Based on these fats, [sic] Hearing officer believes the document is not original. Hearing Officer finds this person guilty of 401 as he is not single cell status and should have gone into the cell.

(ECF No. 19, Exhibit 5, p. 5). Calhoun-El received sixty days concurrent of disciplinary segregation. Warden Shearin affirmed the decision and sanctions August 25, 2011. *See id.*, pp. 1 and 6.

On July 29, 2011, Calhoun-El received an infraction after he refused several direct orders to be handcuffed and exit his cell to receive a cell mate. (ECF No. 19, Exhibit 6). Calhoun-El was then escorted to a temporary housing cell and charged with violating Rules #312 (interfering with or resisting the duties of staff), #400 (disobeying a direct lawful order), and #401 (refusing housing). His property was inventoried when he was placed in the cell. *See id.* At his adjustment hearing on August 25, 2011, the hearing officer concluded Calhoun-El should have obeyed the order to accept housing; however, because Sgt. Smith testified that Calhoun-El subsequently received single-cell status, the infraction was treated as an incident report. Calhoun-El agreed to this disposition. *See id.* p. 4.

## B. DIVISION OF CORRECTION POLICY DIRECTIVES

### 1. INMATE PROPERTY

The Division of Correction issues policy directives ("DCD") in accordance with the Code of Maryland Regulations, COMAR 12.02.17.02. Policy directive DCD # 220-004, "Inmate Property and Clothing" states in part "[t]hese rules contribute to the management of inmate personal property in the institution, and to a safe environment for staff and inmates by reducing fire hazards, security risks, and sanitation problems that relate to inmate personal property." (ECF No. 19, Exhibit 30, p. 1, Part III). Prohibited contraband includes "[a]ny property item in excess of the allowable quantity provided in directives." *Id.*, p. 2, Part V. Excess property for which an inmate provides no authorized address to send that property at inmate expense is considered, after a thirty-day notice, to be abandoned. *See id.*, p. 2, Part V. Inmates may store authorized personal property, but materials may not "accumulate to the point where the materials

9

become a fire, sanitation, security, or housekeeping hazard." *See id.*, p. 3, Part VI. The directive

allows inmates to secure stored items with an approved lock, but notes storing items increases

the likelihood of damage or loss; the responsibility for securing items lies with the inmate. *See*

*id.*

The DCD limits the amount of property an inmate may keep in a correctional facility as

specified in the "Allowable Inmate Property Matrix." *See id.,* p. 3, Part VI. Inmates are allowed

1.5 cubic feet of books and papers according the Property Matrix. (ECF No. 19, Exhibit 32, p. 5).

## 2. DISCIPLINARY SEGREGATION

Directive DCD-110-6, Disciplinary Segregation, addresses how inmates who have been

found guilty at an adjustment hearing of violating an institutional rule are to be housed.

Disciplinary segregation, a restricted special confinement housing status, is a sanction to aid in

the maintenance of order, discipline, and security within the faculty. (ECF No. 19, Exhibit 10, p.

1). Inmates on disciplinary segregation may be denied access to certain property and shall have

"access to selected library services." *See id.*, pp. 3 and 5.

## C. DECLARATIONS

Defendants' declarations filed in support of their dispositive motion provide the

following information.

> **Dale Smith** was housing unit manager where Calhoun-El was housed (Housing
> Unit # 1) in February 2012, attests that he has not denied Calhoun-El access to his
> excess legal paperwork stored in the housing unit property room, does not
> remember receiving any requests from Calhoun-El for his stored property, has not
> withheld mail belonging to Calhoun-El or any other inmate when the mail is in
> compliance with existing departmental and institutional guidelines, and has
> provided Calhoun-El with ARP forms as he would for any other NBCI inmate.
> (ECF No. 19, Exhibit 8). Smith states that if he had received a request from
> Calhoun-El for his legal papers, Smith would have given that request to the
> housing unit property officer to arrange a time for Calhoun-El to retrieve his
> documents. Smith declares that to the best of his knowledge and belief, from May
> 20, 2008 through November 28, 2012, Calhoun-El filed 140 ARPs at NBCI.

Smith attests that on August 12, 2011, Calhoun-El was on disciplinary segregation; thus, he was not permitted to go to the library. Inmates assigned to disciplinary segregation may not leave disciplinary segregation housing to visit the library, but may submit a library request form to obtain reading materials. The library forms are distributed every Sunday. Smith states inmates who refuse housing are placed in a temporary housing cell. On July 29, 2011, Calhoun-El refused to have hand restraints applied and exit his cell to receive a cell mate. Calhoun-El was informed by Officer Preston that he would be escorted to a temporary housing cell and receive an adjustment for refusing the housing assignment. At that point, Calhoun-El allowed hand restraints and was escorted to the temporary housing cell without further incident. *See id; see also* ECF No. 19, Exhibits 9 and 10.

**Randy Durst**, a case manager and the Inmate Grievance Office "IGO" Coordinator, attests that on January 23, 2012, NBCI's Chief of Security instituted a policy that all legal mail envelopes are to be confiscated by staff after the envelope is opened in the inmate's presence and the contents of the envelope are given to the inmate. Inmates may remove the return address and delivery stamp from the envelope, and request a free photocopy of the envelope. This policy was implemented to prevent contraband coming into the prison from the outside in phony legal mail envelopes. *See id.; see also* ECF No. 19 Exhibit No. 13 (stating "[d]ue to the recent attempts to introduce contraband into North Branch Correctional Institution through incoming mail, the envelopes may be opened in from of the inmate and the envelope confiscated").

**David Reed**, a correctional officer, states that on February 22, 2012, he was assigned as Housing Unit #2 C-Tier Officer where Calhoun-El was housed. At approximately 8:00 a.m., while Reed was checking out inmates for morning sick-call passes, he discovered Calhoun-El had checked out during 7:30 a.m. movement for the Support Services Building (SSB) Library instead of staying back to use his morning sick-call pass to go to morning sick-call. When Calhoun-El returned from the library, he was informed that he was out-of-bounds and was issued an adjustment. *See id; see also*, ECF No. 19 Exhibit No. 15, Notice of Inmate Rule Violation, Notice of Inmate Disciplinary Hearing 2012, and Inmate Hearing Record). Calhoun-El was found guilty at the adjustment hearing of being out-of-bounds, and received ten days of cell restriction. The hearing officer credited Reed's testimony and found despite Calhoun's testimony he had no information that he had to go to the medical department, the institution had shown medical pass information is posted a day in advance, so Calhoun-El would have known he had a medical pass, yet chose to go somewhere else. *See id.*

**David Wade**, Assistant Warden, attests he has never denied Calhoun-El access to legal papers. Wade states that on February 24, 2012, he sent a memorandum to Calhoun-El in response to his ARP, instructing him to follow the ARP procedures as outlined in Inmate Institutional Bulletin (IIB) #01-10, and that any future ARPs submitted to his office would be forwarded to his Housing Unit Manager for processing. (ECF No. 19, Exhibit No. 17). Wade attests he does not recall

receiving ARP requests on May 5 or 14, 2012 from Calhoun-El pertaining to legal documents in storage, and if he had received such requests, he would have forwarded them to the Property Room Manager. Wade states that May 15, 2012, his office received Calhoun-El's correspondence complaining that his case manager would not copy his legal work for him. The correspondence was forwarded to the Case Management Department to handle.

**Jamie Farris**, a correctional officer, attests Calhoun-El refused to attend an IGO hearing on April 18, 2012, insisting that he was not going without a cane and that he had paperwork for a cane. Farris contacted William Beeman, a nurse manager, who informed him that Calhoun-El did not have paperwork for a cane from NBCI. (ECF No. 19, Exhibit 24; *see also* Exhibits 25-26).

**Randolph Bennett** is Property Officer of Housing Unit 1 and attests he has never denied Calhoun-El access to his property in Housing Unit #1 property storage. Bennett states that on March 27, 2012, Calhoun-El's property was packed during the 11-7 shift because he was scheduled to leave NBCI for a medical appointment. He declares he has no recollection of speaking with Calhoun-El or receiving a written request regarding his property. Bennett states that he has reviewed Calhoun-El's property file which documents property was packed on March 27, 2012, and returned to Calhoun-El on April 2, 2012. Bennett states he was not the officer who returned Calhoun-El's property to him on April 2, 2012, and has no recollection of speaking with or receiving a written request from Calhoun-El on April 2, 2012. The property was packed on March 27, 2012, by Officer Weimer, but it is unclear from the records who returned Calhoun-El's property to him on April 2, 2012, since the signature is illegible. Bennett further states that on June 4, 2012, he returned a box of legal papers which had been confiscated on January 7, 2012.[13] These papers were returned to Calhoun-El pursuant to court order. Calhoun-El was not required to exchange or destroy any papers already in his cell, and signed the form acknowledging receipt of the paperwork. (ECF No. 19, Exhibits 20 and 21). [14]

**Gary Sindy** a case manager for HU #1's Disciplinary Segregation and Behavioral Management Program (BMP) since May 2012, attests to receiving a hand-written letter dated April 17, 2012 from Calhoun-El requesting his legal materials in storage. Sindy referred Calhoun-El to Lieutenant Broadwater, NBCI's Property Room Manager. Sindy states case managers do not have access to the storage area in HU #1 or the main property room; therefore, inmates who make property requests are referred to either HU # 1's property officer or to the Lieutenant in charge of NBCI's Main Property Room. (ECF No. 19, Exhibit No. 23).

---

[13] *See* ECF No. 19, Exhibits 32 and 33.

[14] Officers M. Kisher and J. Millow inventoried Calhoun-El's property on March 9 and 21, 2012. (ECF No. 19, Exhibit No. 22). Calhoun-El signed property inventory sheets to acknowledge receipt of his property on March 24 and April 9, 2012. (ECF No. 19, Exhibit 21).

**Shawn Gainer**, a case manager assigned to the HU #1 Disciplinary Segregation and Behavioral Management Program, states that when an inmate requests photocopies, case management staff in HU #1 routinely assist by making the copies and returning them to the inmate within seven business days. Gainer states if an inmate is indigent, the copies are free. If the inmate is not indigent, the inmate completes a payment voucher for the photocopies. Gainer attests Calhoun-El's requests for photocopies are processed like those of other inmates. Gainer attests he has advised Calhoun-El on numerous occasions to have a tier officer convey to case management that photocopying of legal material is needed to ensure timely completion of the photocopying requests and to either print darker or use a pen to alleviate the continuing problem of illegible copies. Gainer attests Calhoun-El continues to ignore this advice while continuing to complain that copies returned to him are too light. (ECF No. 29, Exhibit 27).

**Bobby Shearin**, Warden at NBCI, states he received an Order dated May 30, 2012, from Judge Leasure, Circuit Court for Allegany County to return plaintiff's legal materials regarding four appeals pending in that court. The Order was forwarded to the HU [housing unit] Manager #1. Calhoun-El received all legal documents that had been stored previously pursuant to DCD #220-004 and NBCI.ID.220.0004.1. The HU #1 Property Officer sent confirmation to the Warden's Office that NBCI complied with the court order. Calhoun-El signed for his legal materials on June 7, 2012, at 8:45 a.m. Shearin attests he has not denied Calhoun-El access to his legal documents, nor has he denied plaintiff access to counsel. (ECF No. 19, Exhibit No. 28).

**Keith Arnold** is Chief of Security at NBCI. He attests that he does not recall receiving requests from Cahoun-El regarding legal documents held in storage. Arnold declares that if he had received such a request from Calhoun-El, he would have forwarded it to the Property Room Manager. Arnold states inmates are not permitted to buy or possess carbon paper pursuant to NBCI.ID.22.0004.1, section K (43) which prohibits inmates from possessing no carbon paper. Arnold attests he never denied Calhoun-El access to legal documents nor counsel. (ECF No. 19, Exhibit No. 33; *see also* Exhibits No. 22 and 31, p. 5)

**Marcy Legge** is an office supervisor in the NBCI mailroom. She declares that to her knowledge at no time was Calhoun-El's mail, legal or otherwise, withheld, delayed or not processed when the mail was in compliance and consistent with approved policies and directives of the Division of Public Safety and Correctional Services (DPSCS). Legal mail arriving at NBCI is logged for record keeping and forwarded to the proper housing unit for distribution to the appropriate inmate. The "Legal Log Record" maintained by NBCI Mailroom staff documents the name and DOC (Division of Correction) number of the inmate receiving the legal mail, the name of the sender of the documents, the date the document was received by the institution and the signature of the inmate to show receipt and acceptance of the document. She states to the best of her knowledge and belief, no one employed at NBCI mailroom has hindered delivery or stolen mail

belonging to Calhoun-El. Calhoun-El's mail is received, dispensed, and handled just like every other inmate housed at NBCI.[15]

**Jared Zais** is ARP coordinator at NBCI. He states the ARP Office did not receive any ARP requests on or around September 5 or 25, 2011, January 14, 18, 25, 2012, or March 27, 2012 from Calhoun-El. (ECF No. 19, Exhibit 38). [16]

**Scott Oakley** is Executive Director of the IGO. He states he has reviewed IGO records pertaining to IGO No. 20120875. The grievance was filed on April 20, 2012, and appeals a determination that found Calhoun-El guilty of violating Rule #402 (out-of bounds). According to IGO records, this matter was administratively dismissed by letter dated December 19, 2012, due to Calhoun-El's refusal to provided copies of all related disciplinary paperwork to show exhaustion of the disciplinary process before filing his grievance. (ECF No. 19, Exhibits 49 and 49A).[17]

## D. SINDY MEMORANDUM

On January 18, 2012, Defendant J.G. Sindy ("Sindy"), a case manager, wrote to Brenda

Marvin ("Marvin), NBCI's Litigation Coordinator and Administrative Assistant to the Warden,

after Calhoun-El's complained that he was not permitted to keep legal mail envelopes. (ECF No.

19, Exhibit No. 11). Sindy advised Marvin this issue "came up" in an IGO grievance on January

12, 2012. *See id.*

According to Sindy, Calhoun-El admitted to the ALJ during the hearing that he had been

given the contents of his legal mail letters, but complained he was not allowed to keep the

envelopes. The ALJ informed Calhoun-El that as long as he received the contents of the

envelope everything was "legal." *See id.* After Calhoun-El refused to participate further in the

---

[15]   Defendants have filed a copy of Calhoun-El's mail log. (ECF No. 19, Exhibit 37).

[16]   Defendants have filed a copy of Calhoun-El's ARP log. Between May 20 2008 and November 28, 2012, Calhoun-El filed 140 ARP requests. (ECF No. 19, Exhibit 39).

[17]   Calhoun-El was given additional time to submit the requested documentation after he disputed the need to provide this information. (ECF No. 19, Exhibit 49A). Calhoun-El then responded by sending, without explanation, a copy of a single-page ARP complaint in a different and unrelated matter, On August 2, 2012, a letter was sent by the IGO to Calhoun-El to clarify the intent of this response. Calhoun-El did not reply. On December 19, 2012, the IGO dismissed the grievance. (ECF No. 19, Exhibit 49A).

IGO hearing, Sindy moved to dismiss the matter. Sindy indicates the ALJ stated his ruling would issue within 90 days.[18]

### E. NOTICE OF INMATE RULE VIOLATION

On March 8, 2012, Officer Jamie Farris ("Farris")[19] gave Calhoun-El an infraction for refusing to return to the general population, a violation of rules #400 (disobeying a direct lawful order), and #401 (refusing housing). According to Farris, Calhoun-El stated, "I ain't moving anywhere where I could be double celled so I'll stay here." (ECF No. 19, Exhibit No. 18, p. 2).

On April 19, 2012, a hearing officer found Calhoun-El guilty of both rule violations and imposed 45-days disciplinary segregation. The hearing officer's findings state in part, that Calhoun-El "testified he had been given single cell status by a Dr. Ottey and it expired on 09/20/12. This individual did not present any information to indicate his status was extended." *Id.*, p. 6.

### F. ADMINISTRATIVE LAW JUDGE DECISION OF MAY 14, 2012

Calhoun refused to attend his April 4, 2012, IGO hearing without a cane. (ECF No. 19, Exhibit Nos. 25 and 26).[20] The subject of the IGO hearing was Calhoun-El's objection to limits on his property while in disciplinary segregation. In his decision, ALJ Zuberi Bakari Williams noted a nurse manager had indicated Calhoun-El did not have NBCI authorization to use a cane. Additionally, Calhoun-El did not produce evidence to support his position. On May 24, 2012, the ALJ denied and dismissed the case after Calhoun-El failed to appear. (ECF No. 19, Exhibit 25).

### G. ADMINISTRATIVE REMEDY PROCEDURE REQUESTS

---

[18] Defendants filed their dispositive motion on February 14, 2013, and have not advised this Court of the ALJ's ruling.

[19] Farris has since been promoted to sergeant. (ECF No. 19, Exhibit 24).

[20] On March 20, 2012, NBCI medical providers issued an order discontinuing Calhoun-El's authorization for a cane. (ECF No. 19, Exhibit 26).

As previously noted, Jared Zais, NBCI's ARP Coordinator, states he did not receive any ARPs filed by Calhoun-El on or about September 5 and 24, 2011, January 14, 18, and 25, 2012, and March 27, 2012. *See supra* p. 15. The remaining ARP requests listed in the Complaint are summarized below.

**ARP NBCI #1882-09** (filed November 5, 2009). Calhoun-El complained that he was scheduled for the main library in the support service building on October 29, 2009, but was told by the officer in charge that the library was cancelled. Calhoun-El asserts that library was in fact not cancelled. The ARP investigation revealed the library was not closed on October 29, 2009, and Calhoun-El was considered a "no show" for that day. The tier officer indicated that Calhoun-El "checked off" from the tier at approximately 11:45 a.m. to attend afternoon library and at approximately 11:50 a.m. checked back in stating that he was sent back from the library. The ARP was dismissed without merit. (ECF No. 19, Exhibit No. 40).

**ARP NBCI #3363-10** (filed November 16, 2010). Calhoun-El complained the ARP was dismissed at the institutional level and on appeal because carbon paper is considered contraband. (ECF No. 19, Exhibits 41, 30, 31, 32).

**ARP NBCI #1572-11** (filed May 24, 2011). Calhoun-El alleged he was denied access to the library on May 17, 2011, when Officer Nave radioed Officer Gilpin to open the library door and Officer Gilpin instructed Officer Nave to direct Calhoun-El to return to his cell. The ARP dismissed without merit on June 6, 2011, after investigation revealed that Calhoun-El had a medical pass for 12:00 p.m. on May 17, 2011 and missed the movement for in-house library. (ECF No. 19, Exhibit 42).

**ARP NBCI #1576-11** (also filed May 24, 2011). Calhoun-El claimed that he was told by Officer McCoy on May 17, 2011, that library was cancelled because there were not enough officers to cover the library. Calhoun-El also complained his cell was searched in an unprofessional manner. The ARP was investigated and dismissed for lack of merit because the library had been closed for security reasons and Calhoun-El's cell had been chosen for a random cell search. No merit was found to claims the search was conducted in an unprofessional manner. (ECF No 19, Exhibit 43).

**ARP NBCI #2261-11** (filed July 21, 2011). Calhoun-El complained that on July 13, 2011, Officer Markle confiscated an AC adapter, 11 sheets of carbon paper, a white-out pen, and legal documents in a malicious and negligent manner. The matter was dismissed for lack of merit on August 22, 2011 because, 1) some of the property was held for disposition; 2) the legal documents referenced were restricted under DOC directive DCD-110-26; and 3) there was no evidence the confiscation was performed maliciously. It was noted that Calhoun-El had admitted the AC adaptor was not in its original manufactured

condition and failed to cooperate with the staff member assigned to investigate the ARP. (ECF No. 19, Exhibit 43A).

**ARP NBCI #3710-11** (filed December 10, 2011). Calhoun-El complained that beginning on December 2, 2011, the officer-in-charge of HU #2 destroyed his legal envelopes and denied requests for confiscation forms. The ARP was dismissed for lack of merit because on November 30, 2011, housing unit managers were instructed by NBCI administration to retain legal envelopes. In the decision on his appeal, it was observed that Calhoun-El did not deny he was able to record information from his legal envelopes. (ECF No. 19, Exhibit No. 44).

**ARP NBCI #0634-12** (filed February 22, 2012). Calhoun-El complained about the January 7, 2012 confiscation of his property. The ARP request was returned with a memorandum from Assistant Warden David Wade instructing him to follow proper ARP procedures. The ARP was dismissed on February 28, 2012, for failure to follow instructions and procedure. Calhoun-El's appeal of the ARP decision was dismissed on March 28, 2012, for procedural reasons. Specifically, he had failed to resubmit the ARP in accordance with the ARP Coordinator's instructions. (ECF No. 19, Exhibits 45 and 46).

**ARP NBCI #1029-12** (filed April 5, 2012). Calhoun-El complained medical staff was unwilling to order a cane and bottom tier assignment for him. He asserted Dr. Ottey had previously ordered both for him. The ARP was dismissed for procedural reasons pending resubmission by April 24, 2012, to include a copy of Dr. Ottey's medical order. The ARP was later dismissed for failure to timely resubmit. (ECF No. 19, Exhibit No. 47).

**ARP NBCI #1556-12** (filed June 12, 2012). Calhoun-El complained that on May 31, 2012, case manager Gainer charged him for illegible photocopies. Calhoun-El alleged the illegible copies resulted in the dismissal of certain court matters as time-barred because they prevented him from filing necessary legal documents. The ARP was dismissed on July 2, 2012, for lack of merit. (ECF No. 19, Exhibit 48).

## H. CASE MANAGEMENT NOTES

Calhoun-El's case management records show he has attended several IGO hearings, and refused to attend other IGO hearings. (ECF No. 19, Exhibit 50, pp. 1-5, and 7-17). He has requested and received numerous photocopies from case management staff. *See id.* at pp. 2-6, 10-11, and 15-16. Case management staff has instructed Calhoun-El to print darker or use a pen to avoid illegible photocopies. *See id.* p. 2. In early March 2012, Calhoun-El refused to accept his legal mail; however, later on March 19, 2012, he agreed to accept his mail, which was given to him by J. Gary Sindy on March 20, 2012. *See id.*, p. 4. On March 8, 2012, Calhoun-El was

given an opportunity to review his legal work to prepare for an IGO hearing. *See id.* On September 15, 2011, information from his base file was also copied for his attorney. *See id.* pp. 5-6.

On November 6, 2009, Shawn Gainer ("Gainer") returned a packet to Calhoun-El which he stated contained legal mail and a voucher to cover the postage costs. *See id.* p. 14. On January 14, 2010, Gainer gave him the Response received from the Attorney General's Office pertaining to an IGO grievance. *See id.* p. 12.

On April 20, 2010, Gainer gave Calhoun-El Respondent's Memorandum in a case pending in the Circuit Court for Allegany County that was faxed to case management by the Maryland Attorney General's Office. *Id.* p. 11. Calhoun-El's was has been reminded that he may use "copy cards" available in the commissary to make his own photocopies in the library. *Id.* at pp. 13-14.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis of its motions and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotations omitted). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Id.* When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *See id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007). This Court also has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir.1993). When a motion for summary judgment is properly made and supported, the nonmoving party must set out specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324. If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *See Anderson*, 477 U.S. at 249–50. A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citations omitted). Mindful that Calhoun-El is proceeding pro se, this Court must liberally construe his pleadings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (pleadings filed by a *pro se* litigant are held "to less stringent standards than formal pleadings drafted by lawyers).

## I. ACCESS TO THE COURTS

Calhoun-El's first claim is that he has been and continues to be denied access to courts in violation of his rights under the First Amendment.[21] Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977). However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).[22]

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997), quoting *Lewis*, 518 U.S. at 355. "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks

---

[21] This Court notes with concern Defendants' summary one paragraph argument on this issue.

[22] Since 2008, Calhoun-El has filed numerous cases in this Court. *See e.g. Calhoun-El v. Stouffer, et al.*, Civil Action No. RDB-13-1040; *Calhoun-El v. Shearin, et. al*, Civil Action No. RDB-13-692; *Calhoun-El v. Sower, et al.*, Civil Action No. RDB-13-187; *Calhoun-El v. Maynard, et al.*, Civil Action No. RDB-12-2814; *Calhoun-El v. Stouffer, et al.*, Civil Action No. RDB-12-2479; *Calhoun-El v. Stouffer, et al.*, Civil Action No. RDB-3390; *Calhoun-El v. Corizon Medical Services, et al.*, Civil Action No. RDB-12-2383; *Calhoun-El v. Watson*, Civil Action No. CCB-12-2119; *Calhoun-El v. Corizon Medical Services, et al.*, Civil Action No. CCB-12-1386; *Calhoun-El v. Maynard, et al.*, Civil Action No. RDB-10-765; *Calhoun-El v. Maynard, et. al*, Civil Action No. RDB-09-2470; *Calhoun-El v. Maynard*, Civil Action No. RDB-09-3085; *Calhoun-El v. Warden*, Civil Action No. RDB-08-2429. It bears noting that disposition of these cases has resulted in dismissal or summary judgment in favor of defendants. Calhoun-El is also a frequent *pro se* litigator in the state courts of Maryland. *See* http://casesearch.courts.state.md.us/inquiry/inquiryresults.jsp?action=Search&filingDate=&filing Start=&courtSystem=B&filingEnd=&firstName=JAMES&company=N&lastName=CALHOUN-EL&site=00&d-16544-p=7&partyType=&countyName=&middleName=.

assigned to the political branches." *Lewis*, 518 U.S. at 349. Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Id.* at 352-352.

In *Christopher v. Harbury*, 536 U.S. 403, 415 (2002), the Supreme Court characterized access-to-the courts claims as being in one of two categories. *Id* at .413. The first, termed "forward looking claims," are cases where official action frustrates a plaintiff's ability to bring a suit at the present time. *Jennings v. City of Stillwater*, 383 F.3d 1199, 1208-09 (10th Cir. 2004). The second class, termed "backward looking claims," arise when a plaintiff alleges that a specific claim "cannot be tried (or tried with all the evidence) [because past official action] caused the loss or inadequate settlement of a meritorious case." *Id.* at 1209. In this way, the official action is said to have "'rendered hollow [the plaintiff's] right to seek redress'" in the courts. *Id.* (quoting *Christopher*, 536 U.S. at 415 (brackets in original) (internal citations omitted)).

Whether the claim is forward or backward looking, a prisoner claiming denial of access to the courts must ultimately prove he suffered an actual injury by showing Defendants' actions hindered his ability to pursue a nonfrivolous legal claim. Conclusory allegations are not sufficient. *See Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006) (denying access to court claim based on allegation that petition for a writ of certiorari had, for unspecified reasons, been dismissed and where plaintiff did not even mention the point on appeal). The right of access to the courts is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher*, 536 U.S. at 415.

Calhoun-El avers his appeals before the Circuit Court of Allegany County in Civil Actions Nos. 01-C-11-034925-L, 01-C-11-035128-L, 01-C-11-35130-L, and 01-C-11-035719-L were dismissed because he lacked access to necessary records. (ECF No. 1; *see also* ECF No 19,

21

Exhibit 28.)[23] Nowhere in his pleadings does he allege, much less show, that he raised arguable or nonfrivolous claims in these actions or why these unspecified records were needed.

Next, Calhoun-El claims that his appeal filed in the Court of Special Appeals of Maryland was dismissed on May 22, 2012, because he was unable to include circuit court docket entries as part of the record extract. (ECF No. 1, p. 23). Calhoun-El fails to identify the nature of his "appeal" or state why the claims presented are colorable.[24] Similarly, he provides no basis for this Court to view his "common law" papers (ECF No. 1, pp. 23-24) purportedly destroyed as presenting arguable or nonfrivolous claims for a parole board review. In sum, he fails to show requisite injury.

In no part of his Complaint does Calhoun-El demonstrate the alleged a lack of access to materials hindered his ability to pursue a nonfrivolous or arguable claim. *See Christopher,* 536 U.S. at 415. "[T]he predicate claim [must] be described well enough to apply the 'nonfrivolous' test and to show the 'arguable' nature of the underlying claim is more than hope." *Id.* at 416 (footnote omitted). A prisoner's right to access the courts does not include the right to present frivolous claims. *Lewis,* 518 U.S. at 353 & n. 3. Simply put, Calhoun-El's claim fails because no actual injury is shown.

In regard to his other assertions, Calhoun-El does not claim he was denied the contents of legal envelopes; he only disputes the policy that inmates may not keep envelopes. His claim that he is no longer allowed carbon paper is equally unavailing. Not only does he wholly fail to show

---

[23] The Maryland Judiciary website shows Case Nos. 01-C-11-035128-L, 01-C-11-35130-L, and 01-C-11-035719-L were appeals from IGO decision. Case No. 01-C-01-C-11-034925-L was not available on the website.

[24] Insofar as his appeal may have concerned his criminal conviction, Calhoun-El was convicted in the Circuit Court for Montgomery County of murder and related offenses. He is serving a life sentence to be served consecutive to other convictions. The record shows a lengthy history including retrial, challenges his convictions and sentence on appeal, post-conviction petitions, a petition for writ of habeas corpus, and a motion for a new trial. *See* http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId=26250C&loc=68&detailLoc=MCCR.

actual injury, but both restrictions were instituted to prevent transport of contraband into the facility, not in retaliation for Calhoun-El's litigation.

Lastly, Calhoun-El's claims of inappropriate handling of his legal mail and ARP requests are categorically refuted in Defendants' uncontroverted declarations and verified pleadings. Calhoun-El does not address Defendants' assertions that he failed to comply with institutional ARP procedures despite receiving specific written instructions to do so. Consequently, even when judged in the light most favorable to Calhoun-El, his denial of access to the courts claims cannot withstand summary judgment.

## II.  RETALIATION

In order to prevail on a claim of retaliation, Calhoun-El "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).  "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney*, 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983).

> Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *Perry v. Sindermann,* 408 U.S. 593, 597 (1972). Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim.

*ACLU of Maryland, Inc. v. Wicomico County*, Md.  999 F.2d 780, 785 (4th Cir. 1993)

"In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996), quoting *Adams v. Rice*, 40 F.3d at 74 (4th Cir. 1994). A plaintiff "[b]ears the burden of showing that the conduct at issue

23

was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). To make out a *prima facie* case of retaliation, a plaintiff has the burden of showing that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the conduct of Defendants. *See Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977).

An inmate must establish that the retaliatory action did not advance legitimate goals of the correctional institution or was not narrowly tailored to achieve such goals. *Rizzo v. Dawson*, 778 F.2d 527, 532 & n. 4 (9th Cir. 1985). A legitimate goal includes preserving the internal order and discipline of the correctional institution. *See id.* at 532. After an inmate makes a *prima facie* showing, the burden shifts to Defendants to demonstrate that they would have reached the same decision even in the absence of constitutionally protected conduct. *See Mt. Healthy*, 429 U.S. at 287

In this case, restrictions on quantity of inmate paper work applied to Calhoun-El were consistent with DOC policy directives promoting legitimate goals of safety, orderly management, and sanitation. The record amply demonstrates Calhoun-El's excess paperwork was inventoried, stored, and available to him by requests made in accordance with institutional procedures.

Contrary to Calhoun-El's assertion that he was put in a contingency cell on July 29, 2011, in retaliation for filing cases in court and ARP requests, the record shows his placement was predicated on his repeated refusal to follow direct orders to accept a cell mate, for which he was issued a rule violation. Apart from his conclusory assertions, there are no grounds to find his placement in disciplinary housing was a result of improper retaliatory animus. For these reasons, Defendants are entitled to summary judgment in their favor as a matter of law.

## III.   CONDITIONS OF CONFINEMENT

The Eighth Amendment protects inmates from cruel and unusual living conditions. *See Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).  It proscribes conditions that result in an "unnecessary and wanton" infliction of pain, including practices that are "totally without penological justification." *Rhodes*, 452 U.S. at 347 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 & 183 (1976)).

To state a constitutional claim regarding prison conditions, a prisoner must allege facts that the challenged conditions resulted in a deprivation of a basic human need that was objectively "sufficiently serious" and a defendant prison official subjectively acted with deliberate indifference regarding the conditions. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). In order to meet the objective element, a prisoner must show that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions, *see Strickler v. Waters*, 989 F.2d 1375, 1380–81 (4th Cir. 1993).   An inmate is not entitled to relief simply because of uncomfortable, restrictive, or inconvenient conditions of confinement because "[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347.

Insofar as Calhoun-El intends to assert an Eighth Amendment claim regarding his fourteen-day placement in a contingency cell beginning on July 29, 2011, his claim is unavailing. First, he does not allege that he suffered any serious or significant physical injury as a result of his placement. *See Strickler,* 989 F.2d at 1380–81. Second, he fails to allege Defendants acted with sufficient culpability. *See e.g., Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992); *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997); *Strickler*, 989 F.2d at 1379–81.  Not only does his brief placement fail to amount to an "unnecessary and wanton" infliction of pain, but he fails to show the action was "totally without penological justification." *Rhodes*, 452 U.S. at 347.  In

short, his allegations do not amount to a claim of constitutional magnitude. As such, Defendants are entitled to summary judgment in their favor as a matter of law.

## CONCLUSION

After considering the facts and all reasonable inferences in the light most favorable to Calhoun-El, this Court concludes there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Defendants' Motion for Summary Judgment will be granted in a separate order to follow.[25]

Date_____5/28/13_____

_____/s/_____
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE

---

[25] On April 9, 2013, Calhoun-El filed a Motion for Preliminary Injunctive Relief (ECF No. 24), claiming that on April 3, 2013, Defendant Gainer ("Gainer") failed to copy Calhoun-El's legal documents as requested. *See id.* Calhoun-El avers Gainer destroyed his legal documents and has harassed and retaliated against him for filing Civil Actions Nos. CCB-12-2119 and RDB-12-2384 in this Court. Calhoun-El fails to particularize the documents purportedly destroyed, why Gainer's failure to copy his materials on April 3, 2013, amounts to a violation of constitutional proportion, or how he has been harmed or otherwise denied access to the courts. Calhoun-El has not satisfied the standard for preliminary injunctive relief set forth in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, _U.S. _, 130 S.Ct. 2371 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam) (for obtaining preliminary injunctive relief a movant must demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest). Consequently, the Motion for Preliminary Injunctive Relief (ECF No. 24) will be denied by separate Order.